CHARLES E. FLEMING et al., Respondents, *v.* ELBERT L. BURN-
HAM et al., SIMON STERNBERGER et al., Executors, etc., pur-
chasers, etc., Appellants.

The purchaser of land at a judicial sale is entitled to a marketable title.
A title open to a reasonable doubt is not a marketable one, and the court
cannot make it one by passing upon an objection depending on a dis-
puted question of fact, or a doubtful question of law, in the absence of
the party in whom the outstanding right is vested.
A purchaser, therefore, on partition sale may not be compelled to complete
the purchase where there are such objections to the title.
The parties in a partition suit claimed title through a deed from executors
of McK., who died in 1828, seized of the premises, and whose will gave a
power of sale to his executors, " or such one or more of them as shall
take upon him or themselves the burthen of the execution of the will."
Four persons were named as executors ; letters testamentary were issued
to three of them ; two of them only joined in the deed, which was exe-
cuted in 1833 ; it described them as acting executors, reciting the author-
ity conferred by the will. McK. entered into possession in 1833, and he
and others occupied under his title until 1881, without any question as to
the validity of the executors' deed. Upon application of a purchaser at
the partition sale to be relieved from his purchase, it appeared that the
two executors, prior to the execution of the deed, did other acts as acting
executors. There was no evidence, however, of a renunciation of his
office by the other executor to whom letters were issued, or refusal on his

part to act. Four of five beneficiaries, having an interest in the real estate under the will in 1835, joined in a quit-claim deed to De F., grantee in the deed from McK.'s executors, and until 1875, no other person having an interest in questioning the title was in a position to do so. *Held*, that although the facts might have justified a jury in finding that said executor did renounce or refuse to act, yet such a finding would depend upon inferences not incontrovertible, and not binding upon those who might claim title as against the purchaser; and that there was such a doubt in respect to the fact, the court ought not to compel the purchaser to complete his purchase.

The will of McK. devised the real estate in question to his five children, "their heirs, executors, administrators and assigns," but provided in a subsequent clause that in case any of his children died leaving lawful issue surviving, that such issue should take the share which "his or her parent would have been entitled to if living." J., one of the testator's sons, died in 1875 leaving issue. The parties to the action claimed that the children of McK. took an absolute fee, and that De F. in any event acquired title to four-fifths by the quit-claim deed, and as to the other fifth, by adverse possession. *Held*, that as the law stood prior to the Revised Statutes, the question whether said children took a fee absolute, or determinable on their death leaving issue, was at least a doubtful one, and the quit-claim deed did not remove the doubt growing out of the manner of execution of the power of sale.

Also *held* that the title of De F. did not commence to be adverse as against the issue of J. until his death in 1875.

Possession does not begin to be adverse as against a person entitled after the determination of a prior estate, during the continuance of that estate.

*Fleming* v. *Burnham* (36 Hun, 456), reversed.

(Argued June 18, 1885 ; decided October 6, 1885.)

APPEAL from order of the General Term of the Supreme Court, in the first judicial department, made May 8, 1885, which reversed an order of Special Term, discharging Mayer Sternberger, a purchaser on sale under the judgment herein from his purchase, and which directed the executors of said purchaser, he having died after the making of the Special Term order, to complete the purchase. (Mem. of decision below, 36 Hun, 456.)

The action was for partition; the parties claimed under the title of John McKie, who died in 1828 seized of the premises, leaving a will by which he devised said premises to his five children named, " their heirs, executors, administrators and

assigns forever, share and share alike." After various other provisions, the will contained the following :

" *Item.* It is my will and pleasure, and I do hereby direct that in case of the death of any or either of my said children, either before or after my decease, leaving lawful issue him or her surviving, that such issue shall have and take the share and proportion of my estate his or her parent would have been entitled to if living, to hold the same to him, her, or them, his, her, or their heirs, executors, administrators and assigns forever.

*Item.* It is my will and pleasure, and I do hereby declare and direct that in case of the death of any or either of my said children under the age of twenty-one years, either before or after my death, without lawful issue him or her surviving, that the share or proportion of my estate, by this my will given to him or her so dying without lawful issue, shall go to and vest in his, her or their brothers and sisters, him, her or them surviving, their heirs, executors, administrators and assigns, share and share alike, and in such case and event I do hereby give and devise the same to the said survivors of them, my children, their heirs, executors, administrators and assigns, share and share alike.

*Item.* For the more easy and equitable distribution and settlement of my estate in the manner and the proportions aforesaid, I do hereby direct and fully authorize and empower my executors hereinafter named, or such one or more of them as shall take upon him or themselves the burden of the execution of this, my will, as soon as convenient after my decease, to sell and dispose of all and singular my real estate, be the same where it may, and to make and execute to the purchaser or purchasers thereof good and sufficient deed or deeds of conveyance for the same, and to pay and apply the proceeds thereof in the manner and proportions hereinbefore by me directed concerning the same. And lastly, I do hereby constitute and appoint my son-in-law, James Clarke, my sons, Thomas McKie and William McKie, and my son-in-law, Andrew Stark, executors of this my last will and testament, with full power

for them, or such one or more of them, as shall take upon him or themselves, the burthen of the execution of this my will, to do all and every act, matter and thing needful and necessary to carry this my last will and testament into full effect, according to the true intent and meaning thereof, in the same manner as if all of my said executors had taken upon themselves the burthen of the execution thereof."

The testator's son Thomas died in 1875 leaving issue, one of them an infant ten years of age.

The further material facts are contained in the opinion.

*Samuel Hand* for appellants.   The power of sale given by John Mc Kie in and by his will to his executors was not well executed by the deed to De Forest in which only two of the three executors who had qualified and were then living joined. (1 R. S. 735, § 112; *Taylor* v. *Morris*, 1 Comst. 341; Code, § 2642.)   The deed from the children of John McKie (even if given by all) to De Forest did not supply the defective execution of the power of sale by the two executors, nor give De-Forest a good title to the lands in question. (*Chrystie* v. *Phyfe*, 19 N. Y. 344; *Shriver* v. *Shriver*, 86 id. 575.)   By an executory devise a testator may dispose of his whole estate, but upon some future contingency may qualify that disposition, and devise the estate to some other person. (4 Kent's Com. 268, 269; Cruise's Digest, *Devise*, 441; *Jackson* v. *Bull*, 10 Johns. 19; *Jackson* v. *Delancey*, 13 id. 537; *Campbell* v. *Beaumont*, 91 N. Y. 464; 19 id. 351.)   The word "assigns" in the devise to Thomas does not alter the case. (16 Johns. 382.)   Nor did the devise to the issue of Thomas, living at his death, create an estate tail in Thomas within the rule in *Shelley's Case*. (*Chrystie* v. *Phyfe*, 22 Barb. 213; *Lytle* v. *Beveridge*, 58 N. Y. 592.)   The rule in *Shelley's Case* must give way to the plain intent of the testator. (*Rogers* v. *Rogers*, 3 Wend. 503; *Tanner* v. *Livingston*, 12 id. 83.)   The word "issue" is only taken to be a word of limitation when it signifies all the descendants in all generations. (19 N. Y. 353; *Cushing* v. *Henry*, 4 Paige, 345.)   No title to it has been ac-

quired by adverse possession. (*Jackson* v. *Schoonmaker*, 4 Johns. 390; *Jackson* v. *Sellick*, 8 id. 262; *Jackson* v. *Johnson*, 5 Cow. 74.) A purchaser at a partition sale has a right to require a good title, and will not be compelled to complete his purchase and accept a deed which leaves him to the uncertainty of a doubtful title or to the hazard of a contest with other parties, which will seriously affect the value of the property. (*Jordan* v. *Poillon*, 77 N. Y. 518; *Shriver* v. *Shriver.* 86 id. 575; *Argall* v. *Raynor*, 20 Hun, 267.) The court acquires jurisdiction of the person of a defendant in a foreclosure suit by service of the summons. If the defendant be not served with the summons, the court acquires no jurisdiction of his person. (*Ingersoll* v. *Mangam*, 84 N. Y. 622; *Gotendorf* v. *Goldsmith*, 83 id. 110.)

*Alexander Bain* for plaintiffs, respondents. As William McKie did not die until April, 1836, more than three years after the date of the deed in question, it was presumably after the distribution and payment to him of his share of the proceeds of the sale. (*Roseboom* v. *Mosher*, 2 Den. 61; *Sharp* v. *Pratt*, 15 Wend. 610.) If the children of John McKie took a fee in his residuary estate under their father's will, as they clearly did, then the deed from them to DeForest was good, and vested the fee therein, whether the deed executed by two only of the three executors who qualified was valid or not. (Jarman on Wills, 420; *Kane* v. *Astor*, 5 Sandf. 533; *Lovell* v. *Kingsland*, 41 Barb. 560; *Lovell* v. *Gillender*, 35 N. Y. 617; *Post* v. *Post*, 47 Barb. 72; 1 Rob. on Wills, 356; 4 Mass. 208; *Parks* v. *Parks*, 9 Paige, 107; *Covenhoven* v. *Shuler*, 2 id. 107; *Parsons* v. *Best*, 1 T. & C. 211; *Clark* v. *Leupp*, 88 N. Y. 228; *Jackson* v. *Bull*, 10 Johns. 19; *Campbell* v. *Beaumont*, 91 id. 464; *Chrystie* v. *Phyfe*, 19 id. 344.) The record shows the mortgage satisfied of record. If it were not so, after the lapse of fifty years, satisfaction will be presumed. (Code of Civ. Pro., § 381.) A purchaser cannot justify his refusal to perform his contract by a mere captious objection to the title tendered him. It is not sufficient for him merely to raise a doubt as to the title.

Before he can successfully resist, he must show such reasonable doubt as affects the value of the property and interferes with its sale to a reasonable purchaser, and thus render the land unmarketable. There is no inflexible rule that the purchaser must be furnished with a perfect record or paper title. (*Hellreigel* v. *Manning*, 97 N. Y. 56; *Shriver* v. *Shriver*, 86 id. 575; *Ottinger* v. *Strasburger*, Daily Register, Dec. 20, 1884.)

*M. L. Townsend* for respondent Burnham. It was not necessary that William McKie should have renounced as executor, in order that the other two executors should be clothed with the execution of the power of sale contained in the will. It was enough that William had refused or declined to act, or was incapacitated from acting. (*Roseboom* v. *Mosher*, 2 Denio, 61; *Sharp* v. *Pratt*, 15 Wend. 610.) DeForest, at the time of his death in 1872, had a good indefeasible title to the premises, and it is the duty of the court to so hold to the end, that the title may be established and the property made marketable. (*Ottinger* v. *Strasburger*, 33 Hun, 466; *Shriver* v. *Shriver*, 86 N. Y. 575; *Schermerhorn* v. *Niblo*, 5 Bosw. 161; *Hellreigel* v. *Manning*, 97 N. Y. 56; *McCahill* v. *Palmer*, 45 id. 479; *Ward* v. *Warren*, 82 id. 265; *Wolsey* v. *Morse*, 19 Hun, 273.) The claim of the purchaser that Thomas McKie took an estate for life only in one-fifth of the property with remainder to his issue, and for that reason the release by Thomas was not good, is not well founded. (*Roseboom* v. *Roseboom*, 81 N. Y. 350; *Freeman* v. *Coit*, 96 id. 63.) The mortgage was as a matter of fact satisfied and discharged of record in 1883, and remains canceled, and is not a lien upon the premises. (*Belmont* v. *O'Brien*, 2 Kern. 394.)

ANDREWS, J. The most serious objection made by the purchaser relates to the sufficiency of the deed of February 14, 1833, from Thomas McKie and Andrew Stark, two of the four executors named in the will of John McKie, to Gerardus DeForest, to pass title to the premises in question. It is insisted that William McKie, one of the executors named, duly qualified, and should have joined in the execution of the

deed. It is conceded that John McKie died seized in 1828. The answer made to the objection is two-fold, *first*, that the deed was a valid execution of the power of sale vested in the executors of McKie by his will, and *second*, that the five children of the testator took under the will a title in fee-simple to the land, and that conceding that the conveyance by the two executors was not a valid exercise of the power of sale, nevertheless the title of DeForest as to four-fifths of the premises was ratified and confirmed by the quit-claim of April 29, 1835, executed by all the children of the testator, except his son William, and that the title to the share of William, who died in 1836, is barred by adverse possession. It is further claimed that it must be presumed that William received his proportion of the purchase-money on the sale to DeForest, and that the acceptance by him of his share of the consideration, operated as an estoppel, and precluded him, or those claiming under him, from questioning the validity of DeForest's title.

The sufficiency of the first answer, if true, needs no argument. But if the conveyance by the two executors was not a good execution of the power of sale contained in the will, the sufficiency of the second answer depends upon the correctness of the assumption on which it proceeds, viz. : that under the will the five children of the testator took an absolute fee in the premises. If they took a fee-simple, the quit-claim of April 29, 1835, vested in DeForest a good title to four-fifths of the land, and as to the one-fifth devised to the testator's son William, his title and that of his heirs is apparently barred by adverse possession. On the other hand, if under the will the children of the testator took only a base or qualified fee, determinable upon their death, leaving issue, or upon their death under twenty-one years of age, without issue, and the fee on the happening of the contingent event was given over to their issue, or to the brothers and sisters as the case might be, then manifestly the quit-claim deed did not bar the right of the issue of the children, or cut off the ultimate fee given to them on the death of the parent. The deed might become the foun-

dation for an adverse possession, as it purported to be a conveyance in fee, but in this way only could it affect their rights. But an adverse possession under the deed could not be deemed to commence as against the ultimate devisees, until the determination of the precedent estate and the accruing of their absolute title in possession. For it is well settled that the statute does not commence to run against a person entitled after the determination of a prior estate, during the continuance of that estate. (*Jackson* v. *Schoonmaker*, 4 Johns. 390 ; *Jackson* v. *Sellick*, 8 id. 262 ; *Jackson* v. *Johnson*, 5 Cow. 74.) Upon the assumption, therefore, that the issue of the children of the testator took under the will, upon the death of the parents respectively, an estate in fee, as purchasers, in the share of their parents, it is clear, upon the conceded fact that Thomas, one of the sons of the testator lived until 1875, and that he died in that year, leaving issue, one of whom was an infant of the age of ten years, that as against such issue no title by adverse possession had been acquired under the deed of April 29, 1835. There was no right of entry in the children of Thomas until his death. The deed conveyed his title to DeForest, whatever it was, with the right of possession during his life. His children could maintain no action to recover the premises until their right to the possession accrued. The questions, therefore, presented for consideration are, *first*, as to the validity of the deed from the two acting executors, as an execution of the power of sale, and the further question as to the quality of the estate devised by the will of John McKie to his children, and also the question of adverse possession.

It is material, in the first place, to consider the principle upon which objections to title on a judicial sale are to be treated and adjudicated. The purchaser is entitled to a marketable title, free from reasonable doubt. The purchaser bids on the assumption that there are no undisclosed defects. The purchaser pays and the seller receives a consideration, regulated in view of this implied condition. Objections which are merely captious or mere suggestions of defects which no reasonable man would consider, although within the range of pos-

sibility or those which are clearly invalid by the law as settled, whatever doubts may at a former time have existed as to the questions raised, are not available to a purchaser, and will be disregarded. But the question presented to the court on an application to compel a purchaser on a judicial sale who raises objections to the title tendered to complete the purchase, is not the same, as if it was raised in a direct proceeding between the very parties to the right. Where all the parties in interest are before the court and the court has jurisdiction to decide, they are concluded by the judgment pronounced, so long as it stands unreversed, however imperfectly the evidence or facts were presented upon which the adjudication was made, or however doubtful the adjudication may have been in point of law. If the controversy involves a disputed question of fact, or the evidence authorizes inferences or presumptions of fact, the finding of the tribunal makes the fact what it is found to be for the purposes of the particular case, although the evidence of the fact may be weak and inconclusive, or although it is apparent that there are sources of information which have not been explored, which if followed might have removed the obscurity. The parties are nevertheless concluded in such a case, because they were parties to a judicial controversy before a tribunal constituted for the very purpose of deciding rights of persons and property and before which they had an opportunity to be heard. But the court stands in quite a different attitude, where it is called upon to compel a purchaser to take title under a judicial sale, who asserts that there are outstanding rights and interests not cut off or concluded by the judgment under which the sale was made. The objection may involve a mere question of fact or it may involve a pure question of law upon undisputed facts. In either case it may very well happen that the question is so doubtful that, although the court would decide it upon the facts disclosed, in a proceeding where all the parties interested were before the court, nevertheless it would decline to pass upon it in a proceeding to compel a purchaser

to take title and would relieve him from his purchase. The reason is obvious. The purchaser is entitled to a marketable title. A title open to a reasonable doubt is not a marketable title. The court cannot make it such by passing upon an objection depending on a disputed question of fact, or a doubtful question of law, in the absence of the party in whom the outstanding right was vested. He would not be bound by the adjudication and could raise the same question in a new proceeding. The cloud upon the purchaser's title would remain, although the court undertook to decide the fact or the law, whatever moral weight the decision might have. It would especially be unjust to compel a purchaser to take a title, the validity of which depended upon a question of fact, where the facts presented upon the application might be changed on a new inquiry or are open to opposing inferences. There must doubtless be a real question and a real doubt. But this situation existing, the purchaser should be discharged. (*Shriver* v. *Shriver*, 86 N. Y. 575, and cases cited; *Hellreigel* v. *Manning*, 97 id. 56.)

The power of sale in the will of John McKie was vested in his executors named in the will, " or such one or more of them as shall take upon him or themselves the burden of the execution of the will." There were four persons named as executors. On the probate of the will in 1828, as a will of personal estate, letters testamentary were issued to three of the executors, viz.: Thomas McKie, William McKie and Andrew Stark. The will was proved as a will of real estate in 1833. William McKie did not join in the deed to De Forest of February 14, 1833. If he qualified as executor, and, with his co-executors Thomas McKie and Andrew Stark, undertook the burden of the execution of the will, and was not subsequently discharged, or did not renounce his executorship, or refuse to act as executor, then it seems to be conceded that the power of sale was not well executed by the conveyance of his two co-executors, in which he did not join. The court below inferred a renunciation or refusal to act on the part of William McKie, from certain facts which appeared, prominent among which are the circumstances; that in 1832 Stark and Thomas McKie took

from the city of New York a release of certain quit rents charged on the premises in their names as acting executors ; that the deed of February 14, 1833, describes the grantors as acting executors, and recites the authority conferred by the will ; the advertisement and sale of the premises at public vendue to De Forest for $16,150 ; that De Forest in 1833 entered into possession of the premises under the deed from the two executors, and continued in possession until his death in 1873, and that the premises continued to be occupied under his title until the commencement of the present action in partition in 1881, without any question having been raised as to the validity of the executors' deed. On the other hand it may be plausibly urged that the issuing of letters testamentary to William McKie, in connection with Stark and Thomas McKie, creates a presumption that William McKie did take upon himself in 1828 the execution of the will ; that there is no evidence of any actual renunciation of his office as executor, or refusal to act ; that the explanation of the quit-claim of April 29, 1835, may be, that it was procured to remove a doubt or to remedy some supposed defect in respect to the execution of the power by the deed of February 14, 1833 ; that it was not until the death of the children of John McKie that any persons were in a position to question the title of De Forest and his grantees, except the testator's son William, and he received, as may be supposed, his share of the consideration of the sale by the executors, and had no interest to question the title. We do not intend to say that a jury might not be justi-fied, upon the facts presented on the application in this case, in finding that William McKie did renounce his executorship or refuse to act as executor prior to February 14, 1833. (See *Doyle* v. *Blake*, 2 Schoales & L. 229 ; *Wasson* v. *King*, 2 Dev. & B. 262.) But such a finding would depend upon inferences and presumptions by no means incontrovertible, and would not bind the issue of the children of the testator, claiming title as against the purchaser in this proceeding, and there is, we think, such a doubt in respect to the fact that the court ought not to compel the purchaser to complete his purchase upon the

assumption that Stark and Thomas McKie were the only executors authorized or required to join in the execution of the power. In an action of ejectment by the children of Thomas to recover their interest, would the court be authorized to direct a nonsuit against them on the ground that the facts (as now presented) conclusively established a good execution of the power of sale? We think this question must be answered in the negative.

The question whether the children of the testator, John McKie, took under the will an absolute fee, or only a fee determinable on their death, leaving issue, is one of law purely arising on the construction of the will. It is a question which, under the decision of this court in *Chrystie* v. *Phyfe* (19 N. Y. 344), would require grave consideration before pronouncing against the claim of the issue to take as purchasers. The quitclaim of April 29, 1835, does not, therefore, remove the doubt cast upon the title growing out of the execution of the power of sale. The answer to the claim that De Forest and his grantees have acquired a title by adverse possession has been indicated. The possession did not commence to be adverse against the issue of the testator's son Thomas until his death in 1875, and it is the question as to the rights of the issue of the children of John McKie which creates the doubt as to the title tendered to the purchaser in this proceeding.

These views lead to a reversal of the order of the General Term, and the affirmance of the order of the Special Term, discharging the purchaser, etc.

All concur.

Ordered accordingly.