(15 App. Div. 306.)

## BOSKOWITZ v. HELD et al.

(Supreme Court, Appellate Division, First Department.    March 5, 1897.)

1. TRUSTS—MORTGAGE OF TRUST PROPERTY—VALIDITY.
    The rule that a mortgage which a trustee had power to make is not invalidated by a misapplication of the proceeds by him does not apply to a mortgage by trustees appointed to administer property during the continuance of a life estate, with power to mortgage, where the mortgage was given to secure advances to be made to a corporation organized after testator's death, on the notes of the corporation guarantied by one of the trustees, since the violation of the trust is patent to the mortgagee.

2. SAME—APPLICATION OF PROCEEDS OF MORTGAGE—PRESUMPTION.
    It will not be presumed that such mortgage was given pursuant to a power of the trustees to make advances to a beneficiary to enable him to go into business, though such beneficiary was a stockholder of the corporation, since the transaction is, on its face, clearly for the benefit of the corporation.

**3. MORTGAGE—FORECLOSURE—ESTOPPEL BY JUDGMENT.**

A judgment for the foreclosure of a mortgage on trust property, which was executed by the trustees in contravention of the trust, does not establish the validity of the mortgage, as against infant and unborn beneficiaries, so that a purchaser at the foreclosure sale may be required to complete his purchase, where the mortgagee had notice when he took the mortgage that it was in violation of the trust, and sufficient facts appear on the record to put the purchaser on inquiry.

**4. SAME—INVALIDITY—NOTICE TO PURCHASER.**

A purchaser at the foreclosure sale of property mortgaged by trustees is put on inquiry as to whether the mortgage was given in violation of the trust, where the complaint in the foreclosure action states that the mortgage was security for notes given for certain advances, without stating to whom the advances were made, and refers to actions at law to collect the notes, from the judgment rolls in which actions it appears that the notes were made to the mortgagee by a corporation having no apparent relation to the trust estate, and were guarantied by one of the trustees individually.

Appeal from special term, New York county.

Action by Ignatz Boskowitz, as trustee for the Merchants' & Traders' Bank, against Zerlina Held, individually and as executrix of the will of Samuel J. Held, deceased, and others, to foreclose a mortgage, in which there was a foreclosure sale. From an order relieving the purchaser from his purchase (43 N. Y. Supp. 818), plaintiff appeals. Affirmed.

Argued before VAN BRUNT, P. J., and WILLIAMS, PATTERSON, O'BRIEN, and INGRAHAM, JJ.

Charles Strauss, for appellant.
W. H. Stockwell, for respondent.

VAN BRUNT, P. J. Samuel J. Held died on the 17th of June, 1892, seised of the mortgaged premises, leaving a will which was duly admitted to probate, whereby he devised his estate to his executors in trust for the benefit of his wife, Zerlina Held, during her life and widowhood. After providing for the event of remarriage, the testator directed that upon the death of his wife his estate should be divided, share and share alike, among his children; the principal of the share of each of his sons to be invested until the majority of each son, respectively; the interest and income thereof to be applied to his support, maintenance, and education in the meantime. Upon each son arriving at majority he was to be entitled to receive the principal, together with all unexpended interest. The share of his daughter or daughters was to be invested by his executors, and the interest and income thereof to be paid to such daughter during her lifetime, and upon her death the principal was to be divided among her children, share and share alike; and, if no children survived her, the principal was to be divided among her brothers and sisters. The will then contained certain provisions for advancements, and named his executrix and executors, who were to be trustees of his estate and guardians of the persons and estates of his infant children during minority, and authorized and empowered them to lease, sell, or mortgage any or all real estate of which he might die seised, and to convert realty into personalty and personalty into realty as to them might seem

best. Zerlina Held, the widow, and one Bernhard Hecht qualified as executors. The testator left, him surviving, his widow, three sons, and a daughter. On or about the 10th of July, 1893, Zerlina Held, Jeanne Held, and S. Julian Held incorporated the S. J. Held Company, for the purpose of doing a millinery business, with a capital stock of $100,000, consisting of 1,000 shares, of which Zerlina Held subscribed for 900 and the other two for 50 each. The capital stock was all paid in on or about the 2d of August, 1893. On the 8th of August, 1893, the defendants Zerlina Held and Bernhard Hecht, executors of the will of Samuel J. Held, executed the bond and mortgage foreclosed in this action, to the plaintiff in his individual name, for $15,000; both the bond and mortgage reciting that they were given as collateral security for the payment of certain notes given and to be given to the Mechanics' & Traders' Bank of the City of New York for moneys advanced and to be advanced, and should any such notes so given become due and payable, and should same remain unpaid, then the bond and mortgage should become due and payable immediately thereafter. In December, 1895, this action was brought to foreclose said mortgage. The complaint alleged the execution of the bond and mortgage, and that they were given as collateral security as above mentioned, and that the defendants Zerlina Held and Bernhard Hecht, as executors, had failed to pay said indebtedness as thereinbefore provided, by omitting to pay four notes representing advances made by the bank for which said bond and mortgage were given as collateral security, amounting in the aggregate to $12,500, and interest thereon from their respective due dates; specifying the dates from which interest was to run, the earliest date mentioned being October 30, 1895. The complaint further alleged that no proceedings had been had, at law or otherwise, for the recovery of said sums secured by said bond and mortgage, except that two actions were instituted in the supreme court upon two of the notes intended to be secured by said bond and mortgage, resulting in judgments being entered therein, and executions duly issued thereon to the sheriff of the city and county of New York, where the judgment rolls of said judgments were filed. An examination of the judgment rolls in the actions on these two notes disclosed that the notes sued on were notes made by the S. J. Held Company to its own order, and thereupon indorsed by Zerlina Held "for the purpose of guarantying the payment of said note." The remaining two notes, which, together with the notes sued on, represented the amount claimed in this action, are of the same character. Clarence Held, one of the defendants, is an infant, who became 17 years of age on the 3d of September, 1896, for whom a guardian ad litem was appointed upon his own petition. The only answer interposed in the foreclosure action was that put in by the guardian ad litem for the infant. On the 10th of August, 1896, an order of reference was made to compute and ascertain the amount due to the plaintiff for principal and interest on the bond and mortgage, and also to take proof of the facts and circumstances stated in the complaint, and to examine the plaintiff or his agent, on oath, as to any payments which had been made

on said bond and mortgage. The referee reported the sum of $12,-500 to be due, made up apparently of notes dated July 3, 1895, July 22, 1895, September 23, 1895, and September 23, 1895, maturing, respectively, November 5, November 22, October 30, and December 2, 1895. The decree of foreclosure having been entered, and a sale made pursuant to such decree, the respondent purchased at such sale, and, upon learning the foregoing facts in respect to the bond and mortgage in question, refused to complete. A motion was made upon the part of the plaintiff to compel him to complete, which motion was denied, and he was relieved from his purchase, and from the order thereupon entered this appeal is taken.

It is claimed upon the part of the appellant that the court below erred and was wholly unjustified in holding that the mortgage in question was void, or that the making of the same was a breach of trust, or that the advances for which it was given were not made for the benefit and for the proper purposes of the estate of Samuel J. Held, or that the plaintiff or the bank represented by him were not bona fide holders of the mortgage, or that the record shows any concealment of facts or attempted concealment of facts by the plaintiff, or any collusion between the parties. It has been seen that the executors were, by the terms of the will, clothed with the fullest power to lease, sell, and mortgage the whole or any part of the real estate of the testator; and it is a familiar principle that where the trustee has the power to act, and he has apparently acted within the scope of the authority conferred upon him by the trust, the title of a party paying or advancing money to the trustee upon the faith of security given by such trustee cannot be impeached by the mere fact that the trustee has misapplied the money so received. If, however, the facts and circumstances surrounding the transaction are of such a character that the lender of the money has reason to know that the trustee is not acting in the administration of his trust, but in violation thereof, the power conferred upon the trustee to do the act in question will not protect the lender. In the case at bar it appears upon the face of the transaction that this bond and mortgage were given to secure advances made and to be made upon the notes of a manufacturing company formed after the death of the testator; in which notes the executors and trustees of his estate had no right to traffic; in which, presumably, they had no interest; and from the form of which the necessary deduction, in the absence of any proof, is that whatever advances were made upon said notes were made to the corporation, and not to the executors and trustees of the estate. These facts, of which the mortgagee was well aware, clearly showed that this mortgage was not executed in pursuance of any power conferred by the will of the testator, but was for a purpose in violation of the duties of the executors and trustees to said estate.

It is urged that because the will contained a clause conferring power on the executors to make advances to the daughter for her dowry upon her marriage, and if before the death of his wife, and after the majority of either of his sons, it should seem best to the executors so to do, they were authorized to advance to his sons, for

the purpose of enabling them to go into business or continue in business, such sum as to his executors might seem discreet, it must be therefore assumed that the money which was raised in the manner stated was devoted to this purpose. Even for this purpose the executrix and executors of this estate had no power to traffic in the notes of this corporation, and to give a bond and mortgage as collateral security for the discount of such notes. There is nothing in the record tending to show that the bond and mortgage were executed for any other purpose than that which appears upon their face, namely, as collateral security for discounts procured by this corporation. No other conclusion can be deduced from the conceded facts, and from the facts which were within the knowledge of the mortgagee at the time of the receipt of the mortgage, and there is not a scintilla of proof offered here that one dollar was ever advanced to the executor and executrix of this estate. In fact, the judgment rolls referred to in the complaint in the foreclosure action show to the contrary. The whole indebtedness is an indebtedness of the corporation, guarantied by one of the executors, with which it does not appear that the estate of the testator had anything whatever to do. Therefore it would seem that the authority to borrow money upon bond and mortgage for the purposes of the administration of the estate should not afford a shield for a transaction which upon its face shows that the bond and mortgage were not given for any such purpose. Various authorities are cited to sustain the claim that the moneys advanced were in fact loaned to the estate. There is not the slightest particle of evidence to that effect. It does not appear from the record that the estate ever received a dollar, or pretended to receive a dollar, of the money advanced upon these notes, nor that the estate had any right or title to these notes. The bond and mortgage did not claim upon their face to be given for any money to be advanced to the estate. They are studiously silent upon that point, and the judgment rolls above referred to show that the advances were not made to the estate.

It is further claimed on the part of the appellant that the supreme court had jurisdiction of the subject-matter and of the parties, as far as the subject-matter was concerned, and therefore its judgment is conclusive as to whatever is therein adjudicated, and the purchaser's title will not be affected by errors or defects not going to the question of jurisdiction, and that no one but the parties to the action can call in question the purchaser's title, and, as all such parties are bound by the judgment, there is no reason why the sale should not be consummated. These propositions rest upon the assumption that there was nothing upon the face of the mortgage and the foreclosure record to call for the inquiry which the purchaser has made, and that the judgment was conclusive upon all parties, including the remainder-men, both living and unborn. It seems to us that, upon the contrary, there was ample upon the face of the bond and mortgage to call upon the purchaser to make the inquiries which he did, and that there was enough in the bond and mortgage, the foreclosure record, and the papers therein referred to, to establish everything that was subsequently discovered. The bond and mortgage, in the

first place, as already stated, do not pretend to be given as security for any money to be advanced to the estate. There was no allegation that the estate owed the plaintiff a dollar for money loaned to it. The judgment rolls referred to in the complaint show that the legitimate inference to be drawn was that the notes were discounted for the corporation, and the referee's report shows that the money claimed to be due upon the bond and mortgage was upon notes made two years after the existence of the bond and mortgage, having short periods to run. The inference to be drawn from these facts necessarily was that the executors and trustees of the estate had executed this bond and mortgage, not in the interests of the estate, but in the interests of the business of the corporation mentioned in the judgment rolls filed in the actions upon the two notes.

As has been already stated, one of the defendants was an infant, and the testator left one daughter, who at the time of the foreclosure action was unmarried. It was provided in the will that the share of this daughter should be held in trust for her during life, and upon her death should go to her children, if any, and, in case of her death without children, to her brothers and sisters. While it may be entirely true that where an estate is vested in living persons, subject only to the contingency that persons may be born who will have an interest therein, the living owners of the estate, for all purposes of any litigation in reference thereto, and affecting the jurisdiction of the courts to deal with the same, represent the whole estate, and stand, not only for themselves, but also for persons unborn (Kent v. Church of St. Michael, 136 N. Y. 10, 32 N. E. 704), a living owner, either by collusion or neglect to protect his title, cannot cut off the rights of the unborn, in favor of a party who is cognizant of the fact that the powers conferred by the trust have been perverted to purposes not authorized by such trust. It is undoubtedly true, as already stated, that, where the lender of money acts in good faith, the bad faith of the trustee cannot affect his title to the security given. But such a rule cannot apply to a party who has notice, or to a party who is put upon inquiry, which inquiry would develop the fact that the trustee is misusing his power; and the collusion or neglect of the life tenant under such circumstances cannot succeed in cutting off the rights of the remainder-men because a judgment has been allowed to be taken, through such collusion or neglect, establishing the validity of the security. In the case at bar the life tenant was one of the organizers of this corporation; presumably, had knowledge of its affairs and business; was presumably interested in this very transaction; and she allows the estate of her successors to be forfeited in a transaction which she knew the executors and trustees under her father's will had no right to engage in. It will be seen that the whole question turns upon the good faith of the mortgagee, and whether the transaction was of such a character as to call his attention to the fact that it was an irregular exercise of the powers of the executors and trustees It seems to us, furthermore, that it would be exceedingly hazardous for a purchaser to take title, being aware of all these facts, because, upon the attention of the court being brought to the nature of the transaction, it would, in the interests of the in-

fant as well as of the unborn remainder-men, necessarily set the same aside. And it was the duty, and still is the duty, of the guardian ad litem of the infant defendant to take proceedings to vacate this judgment, in order that the interests of his ward may be protected.

The order should be affirmed, with $10 costs and disbursements.

WILLIAMS, PATTERSON, and O'BRIEN, JJ., concur.

INGRAHAM, J. I concur with the Presiding Justice in the affirmance of this order. The complaint alleged that the mortgage sought to be foreclosed was executed under the power conferred by the last will and testament of Samuel J. Held upon his executors, the mortgagors, and that the bond to secure which the mortgage was given recited upon its face that it was given as collateral security for the payment of certain notes given and to be given to the Mechanics' & Traders' Bank of the City of New York for moneys advanced and to be advanced, and that the bond was conditioned upon the fact of said notes having remained unpaid. There is nothing in the complaint to show that the said notes were the notes of the executors, or that the bank acquired the notes, or advanced the moneys thereon to the executors. The validity of the mortgage depended upon the valid exercise of the power to mortgage by the executors. An examination of the will, which conferred the power to mortgage, shows that by it the testator created a trust during the life of his wife, Zerlina, or so long as she should remain his widow, and that upon the death or marriage of his wife his estate was to be divided, except that the share of his daughter or daughters should be invested by the executors, and the interest and income thereof to be paid to such daughter during her life, and upon her death the principal to be divided among her children, share and share alike. It appeared that the testator left one daughter, who, at the time of the execution of the mortgage, was unmarried and without issue, and that his wife was still alive and unmarried. Upon the foreclosure of this mortgage the executors were made parties, as were also the children of the deceased. There is nothing in the record—either in the complaint or in the proof before the referee—to show that the notes in question were the notes of the estate, that they had been acquired by the bank prior to the time of the execution of the mortgage, or that the plaintiff or the bank, for which the plaintiff was acting as trustee, had advanced any of the moneys represented by the notes to the executors. From the date of the notes, it would appear that two of the four were dated after the execution and recording of the mortgage. It is well settled that upon a judicial sale a purchaser is entitled to a marketable title of the property purchased by him, and that the court will not require such a purchaser to take a title which is subject to such serious doubt as would justify a prudent man in refusing to accept it as a compliance with a contract of sale, and a purchaser will not be forced to accept where the doubt arises upon a question of law. See Fleming v. Burnham, 100 N. Y. 1, 2 N. E. 905; Abbott v. James, 111 N. Y. 676, 19 N. E. 434; and Kilpatrick v. Barron,

125 N. Y. 751, 26 N. E. 925.  While, under section 1632 of the Code
of Civil Procedure, a conveyance upon a sale made pursuant to a
final judgment in an action to foreclose a mortgage vests in the
purchaser of the real estate the title to the property of the mort-
gagor and mortgagee, and while such a conveyance is as valid as
if it were executed by the mortgagor and mortgagee, and is an en-
tire bar against each of them, and against each party to the ac-
tion who was duly summoned, and every person claiming from,
through, or under a party, by title accruing after the filing of the
notice of the pendency of the action, we cannot say, I think, that
all persons who may ultimately become entitled to a share in this
property were before the court, so as to bar the subsequent right
to claim that this mortgage was not given as a valid exercise of the
power contained in the will of this testator.   From the allegations
of the complaint itself, and the proof before the referee, as stated
by the Presiding Justice, it is quite clear that the execution of
this mortgage was not a valid exercise of the power to mortgage
contained in the will.   One of the defendants was an infant, and
while he was before the court, and a guardian ad litem had been
appointed, no defense had been made on his behalf, although the
mortgage had assumed to convey his interest in the property.   I
am inclined to think that it was the duty of the court, upon these
facts being presented to it, to direct the guardian ad litem to ap-
ply to have the judgment set aside, and to allow the infant to come
in and defend; but assuming that, in the absence of such an attack
upon the judgment, the rights of the infant would be barred by
the conveyance under the judgment, I think a most serious ques-
tion is presented, as to whether those entitled to the share of the
daughter upon her death would not have a right to attack this mort-
gage as absolutely void as to them.   I think the question as to the
validity of this conveyance as a bar to the rights of the children of
this daughter is at least so doubtful that we ought not to decide it
and compel an acceptance of the deed in the absence of, and with-
out hearing, those who would be entitled to share in the property
upon the termination of the life estate of the daughter.   I concur,
therefore, in an affirmance of the order appealed from.