ADELBERT KULLMAN, Appellant, *v.* HENRY D. COX, Respondent.

*Specific performance — where a father, a tenant by the curtesy and guardian in socage, acquires real estate left by his deceased wife, by means of a mortgage foreclosure occasioned by his default in payment of interest, his title is marketable.*

A father, who was guardian in socage of his infant children and tenant by the curtesy of premises formerly owned by their deceased mother, subject to a mortgage which was by its terms to become due, at the option of the mortgagee, upon a default of thirty days in the payment of interest, suffered the premises to be sold in foreclosure upon a default in the payment of six months' interest for thirty days, and soon thereafter took a deed of them from the mortgagee, by whom they were purchased at such sale, for the same consideration as that paid at the foreclosure sale, giving in payment a larger mortgage than that foreclosed.

In an action subsequently brought by the father to compel specific performance of a contract made by him for the sale of such premises,

*Held,* that, in the absence of evidence that the father acted in bad faith or with the intent to deprive the infants of their interest in the property, his title to the premises was a marketable one.

O'BRIEN, J., dissented.

APPEAL by the plaintiff, Adelbert Kullman, from a judgment of the Supreme Court in favor of the defendant, entered in the office of the clerk of the county of New York on the 23d day of July, 1897, upon the decision of the court rendered after a trial at the New York Special Term dismissing the complaint upon the merits.

The action was brought for specific performance of a contract for the purchase of real estate.

*Samuel Untermyer,* for the appellant.

*Francis B. Chedsey,* for the respondent.

McLAUGHLIN, J.:

On the 23d day of April, 1885, Anna Kullman died intestate, leaving a husband, this plaintiff, and their four children, all minors, the oldest born in 1866 and the youngest in 1875. At the time of her death she was the owner of the premises described in the complaint, subject to a purchase-money mortgage given to and held by one Hupfel, to secure the payment of $3,600 on the 1st day of January, 1889, together with interest thereon which was payable

semi-annually.   The mortgage contained a provision that in case default should be made in the payment of the interest, and such default continued for a period of thirty days, then the principal sum should become due and payable at the option of the mortgagee. The interest due July 1, 1885, was not paid, and it having remained unpaid for more than sixty days Hupfel declared the whole amount due, and instituted an action to foreclose.   The action was prosecuted to and resulted in a judgment directing a sale and providing "that either or any of the parties to the action" might become purchasers thereat.   Under this judgment the premises were sold in January, 1886, purchased by Hupfel for $4,000, and he held the same until February following, when he conveyed to the plaintiff for the same consideration, taking back a purchase-money mortgage for $3,800.   The plaintiff has since held the title to, and during all of the time mentioned has resided upon, the premises.   In November, 1896, the defendant contracted to purchase, but thereafter refused to perform upon the ground that plaintiff's title was not marketable.   This action was then brought to compel defendant to carry out his agreement.

The trial court, upon these facts, which are undisputed, held as a conclusion of law that the foreclosure of the mortgage, by reason of the plaintiff's default in the payment of the interest due thereon, and the conveyance of the property to him while holding the relationship of guardian in socage of his minor children, did not vest in him a title free from reasonable doubt, "nor one that may not be successfully impeached by his children."   From the judgment thus entered the plaintiff appealed.

No defect is claimed to exist in the foreclosure proceedings or in plaintiff's record title, and no evidence was given upon the trial, beyond that disclosed by the records, to show that the foreclosure and sale was brought about by the plaintiff to deprive the infants of their interest in the property.   There is not a single fact disclosed by the record as it comes to us which indicates that the plaintiff, in all he did, leading up to and in acquiring the title to this property, did not act in good faith.   There is absolutely no evidence of a dishonest intent on his part, and there is nothing from which it can be inferred.   A title, therefore, which is thus supported by a perfect record is presumed to be a good and valid one, and that pre-

sumption continues until facts extrinsic of the record are established which are so inconsistent with or repugnant to the record that they are permitted to supersede it. A purchaser is of course entitled to a marketable title, and it has been held that the title need not in fact be bad in order to relieve one from his purchase; " but it must either be defective in fact or so clouded by apparent defects, either in the record or by proof outside of the record, that prudent men, knowing the facts, would hesitate to take it." (*Greenblatt* v. *Hermann,* 144 N. Y. 13; *Fleming* v. *Burnham,* 100 id. 1; *Moore* v. *Williams,* 115 id. 586.)

Hupfel had a right to foreclose his mortgage, and, under the judgment, to become a purchaser at the sale. He acquired good title by virtue of the sale, and this he transferred to the plaintiff. The plaintiff, therefore, in the absence of proof that he acted in bad faith, or to the prejudice of his wards, must be deemed to have acquired a marketable title. The most that can be said against his title is that there is a bare possibility that the infants were deprived of their interest in the property by some wrongful act of his or by a conspiracy entered into between him and Hupfel. The defendant, however, has either not been able or has not seen fit to make any proof upon that subject, but instead has left it to mere conjecture or speculation and without a single fact to support such a hypothesis. A mere possibility of this character is not sufficient to raise a reasonable doubt as to the validity of a title good upon the record.

We think the learned trial court erred in dismissing the complaint, and for this error the judgment must be reversed and a new trial granted, with costs to the appellant to abide the event.

VAN BRUNT, P. J., PATTERSON and INGRAHAM, JJ., concurred; O'BRIEN, J., dissented.

O'BRIEN, J. (dissenting):

I cannot concur in the conclusion reached by the majority of the court. It is conceded that, in order that the plaintiff may succeed in this action, the title which he tendered must be marketable and free from reasonable doubt. It appears that the premises were part of a larger tract of which the plaintiff's wife died seized in 1885, sub-

ject to the Hupfel mortgage of $3,000, upon which interest was payable at the rate of six per cent, and the principal of which was not payable until January, 1889. In June, 1885, six months' interest, amounting to $108, became due, and, remaining unpaid for more than thirty days, the mortgagee declared the principal due because of such non-payment, and brought an action to foreclose the mortgage, laying the venue in the county of Westchester. The property was subsequently sold under foreclosure, and bid in by the mortgagee for $4,000. The referee's deed was recorded on February 23, 1886, and two minutes later a deed from Hupfel, the mortgagee, to Kullman, the plaintiff, expressing a consideration of $4,000, was recorded in the same office, together with a mortgage executed by the plaintiff back to Hupfel for $3,800, payable February 1, 1889, with interest at six per cent. The plaintiff, prior to the death of his wife, had resided with her and her four children, three of whom were minors, upon the mortgaged premises, and maintained there a saloon, buying beer from the mortgagee, who was a brewer.

The plaintiff, as tenant by the curtesy and as guardian in socage of his minor children, while in the possession and enjoyment of the premises, had the duty cast upon him of paying the interest on the mortgage, and thus preventing a foreclosure. In addition, as guardian in socage, he occupied a fiduciary relation towards his minor children, which would prevent him from obtaining, at their expense, any individual benefit. Having failed to discharge the obligation which rested upon him of paying the $108 interest, and having subsequently obtained the premises, of which the minor children were deprived by reason of his default, there would be a fair ground for contending that the title thus acquired inured to the benefit of such minors. Apart, however, from this, the facts appearing, of which a purchaser examining the record was chargeable with notice, would raise a fair inference that the forms of law which were strictly observed in the foreclosure suit, and which divested the minors of their title in and to the property, were resorted to for that specific purpose; because we find that the $108, which was a small amount due for interest, was allowed to remain unpaid, and the venue of the foreclosure suit was fixed in Westchester county, while the parties all resided in the city of New York; and that, contrary to the

rules of the court, a sale took place upon the premises, instead of at the Real Estate Exchange, and the purchase was made by the mortgagee, who, prior and subsequent to the foreclosure, was engaged in selling beer to the plaintiff for his saloon; and thus the inference that the suit was a friendly and not a contested action arises.

Although the referee's deed is dated in January, it appears that it was not recorded until just two minutes before Hupfel conveyed the property to the plaintiff. The consideration for that conveyance was $4,000, the plaintiff giving back a mortgage for $3,800, and paying in cash at that time more than would have been sufficient to pay the interest when it was due. The effect of the foreclosure, therefore, was not to put the mortgagee in any better position or give him more ample security — it appearing that he increased the amount of the principal by $200; nor was it of any advantage to the plaintiff, because it did not assist him to pay the interest which was due, but compelled him, in addition, to pay the costs and expenses of the foreclosure suit; but it cut off and divested the title of the minors. I think there is force, therefore, in the argument of the respondent, that all the circumstances attending the transaction appearing on the record raise the presumption that the plaintiff procured the foreclosure for the purpose of cutting off the remainders of his infant children and acquiring the whole title for himself.

It is claimed that the fact that the father held the title, and did not enter into this contract until after the youngest child had become of age, in some way strengthened his position. This contract was made in November, 1896; and it would appear that the youngest child became of age in the same year, and some months prior thereto. But there is no evidence that any of the minors ever had knowledge of the conduct of their father, or that notice was in any way ever brought home to them, it appearing that most of them left him about two years after the death of his wife. Their right, therefore, to repudiate his conduct, or to insist upon their rights in the property, was not terminated, nor would the Statute of Limitations be set running until after notice or knowledge had been brought home to such children.

It is further insisted that it was error not to permit oral evidence to be introduced to remove the doubt which was thus created as to

the validity of the plaintiff's title. In excluding such, I do not think that the court erred; because, as said in *Fleming* v. *Burnham* (100 N. Y. 1): " A title open to a reasonable doubt is not a marketable one, and the court cannot make it one by passing upon an objection depending on a disputed question of fact or a doubtful question of law, in the absence of the party in whom the outstanding right is vested." And in *Moore* v. *Williams* (115 N. Y. 592) it is said : " A good title means, not merely a title valid in fact, but a marketable title which can again be sold to a reasonable purchaser, or mortgaged to a person of reasonable prudence as a security for the loan of money. A purchaser will not generally be compelled to take a title when there is a defect in the record title which can be cured only by a resort to parol evidence, or when there is an apparent incumbrance which can be removed or defeated only by such evidence, and so far as there are any exceptions to this rule, they are extraordinary cases in which it is very clear that the purchaser can suffer no harm from the defect or incumbrance. In *Swayne* v. *Lyon* (67 Penn. St. 436), SHARSWOOD, J., said : ' It has been well and wisely settled that under a contract for the sale of real estate the vendee has the right, not merely to have conveyed to him a good title but an indubitable one. Only such a title is deemed marketable, for, otherwise, the purchaser may be buying a lawsuit which will be a very severe loss to him both of time and money, even if he ultimately succeeds. Hence it has been often held that a title is not marketable when it exposes the party holding it to litigation.' " (See, also, *Greenblatt* v. *Hermann*, 144 N. Y. 13; *Irving* v. *Campbell*, 121 id. 353; *Kilpatrick* v. *Barron*, 125 id. 751.)

The defendant was to pay $8,500 for this property. But the result of the foreclosure has been to place the plaintiff in undisturbed possession of the property, wherein he was enabled to carry on his business, not even being burdened, except for a short time, with the support of his children. Thus, by the default which he suffered in failing to pay $108, he has secured to himself, not only a long lease of the premises, but a substantial equity in money, all of which would have inured to the benefit of the minors, towards whom the plaintiff held a fiduciary relation as guardian in socage, if, in the discharge of the obligations imposed upon him by such relationship, he had paid the amount of $108 interest, which was

much less than the sum that he subsequently paid in order, for his individual benefit, to acquire the property, of which, as the result, apparently, of a friendly action between himself and the mortgagee, he succeeded in depriving his children.

I think that the judgment below was right and should be affirmed.

Judgment reversed, new trial ordered, with costs to the appellant to abide the event.