(31 Misc. Rep. 678.)

HAMERSCHLAG et al. v. DURYEA.

(Supreme Court, Special Term, New York County.    June, 1900.)

VENDOR AND PURCHASER—TITLE BY ADVERSE POSSESSION.

In an action by plaintiffs to recover money paid on a land contract, it appeared that only one of two co-tenants deeded the property to defendants' grantor, a hospital society, and plaintiffs therefore claimed that the title was defective. Evidence showed that the deed purported to convey the entire property, and that the society went into possession thereunder in 1834, removed certain buildings, put in carriage roads and walks and a vegetable garden, and fenced in the entire property, which remained inclosed for 60 years, and that no adverse claim was ever made. The society deeded the land to defendant in 1889. *Held*, that the evidence established title by adverse possession in defendant's grantor, and that therefore defendant could convey a good title, and could enforce the contract.

Action by Joseph Hamerschlag and others against Oscar Duryea. Judgment for defendant.

William H. Stockwell, for plaintiffs.
Eldridge G. Duvall, for defendant.

ANDREWS, J. On October 16, 1897, the plaintiffs entered into a contract with defendant whereby they agreed to purchase certain premises in the city of New York. At the time of the execution and delivery of such agreement they paid to the defendant on account of the purchase price the sum of $1,000. They afterwards had the title searched, and, a defect of record having been found, they declined to carry out the contract, and brought this action to recover the $1,000, and $237.50, the cost of having the title searched. The defendant served an answer, in which, among other things, he set up that he had purchased the property from the Society of the New York Hospital in the year 1889, and, in effect, that the New York Hospital had acquired a good title by adverse possession. The answer also contained a counterclaim in which relief was asked that

the plaintiffs be compelled to carry out the contract. The action was tried at special term, and the plaintiffs' complaint was dismissed, and judgment was rendered in favor of the defendant upon his counterclaim, granting the relief prayed for,—that the plaintiffs should complete the purchase upon the terms mentioned in said contract. An appeal was taken to the appellate division, which reversed the judgment and ordered a new trial, which has now been had. 56 N. Y. Supp. 615. The title to said premises became vested on or before November 1, 1827, in Ely Moore. Moore and wife conveyed the same to Thomas Shephard and William Shephard, by deed dated November 16, 1827, recorded May 4, 1829. There appears of record a deed made by Thomas Shephard and wife to the Society of the New York Hospital, dated November 26, 1834, and recorded December 4, 1834. There also appears of record a deed made by said society to the defendant, dated May 2, 1889, and recorded November 18, 1889. No conveyance of said premises by William Shephard, one of the grantees of said Ely Moore, appears of record, and there. is no evidence that the interest of said William Shephard has ever been acquired by the defendant through any conveyance from said Shephard or his heirs. The appellate division held that there was not sufficient evidence that the said society had ever acquired title by adverse possession as against said William Shephard or his heirs, and the defendant on this trial has endeavored to cure the infirmities in his title which were pointed out by the appellate division by submitting new evidence. Such new evidence tends to establish the following facts: James Lorimer Graham, an eminent lawyer in his day, examined the title for the New York Hospital, and accepted a full-covenant deed from Thomas Shephard only. This deed was put away carefully with the records of the society in an envelope, plainly marked, and the New York Hospital went into possession of the property in 1834, and from that time has been in the peaceable, undisturbed control and possession of the entire property. The original deed, with the minutes of the committee which had charge of the matter, were produced in court. In 1844, part of the property having been sold for taxes, the society applied to the comptroller for relief, and the comptroller gave a decision which recognized the title of the society in the property in question, and directed a return to the parties who had bought tax titles covering the property; and the premises were thereupon exempted from taxation, as the property of the hospital, and the money paid by the purchasers was refunded. The tax books for the Twelfth ward of the city of New York for the year 1843 were produced in court, and showed that the property in question was assessed to the New York Hospital as owner. In 1884 and 1885 petitions were filed by the hospital, representing that it had owned, managed, and carried on an asylum for the insane on the property, including the premises in question, and requesting that certain streets should be permanently closed. In 1842 the asylum committee ordered the building situated on the premises in question to be removed, and this was done. Evidence is also given showing the death of a William Shephard on September 7,

1831, and that letters testamentary on his estate were granted; the petition therefor showing that he left his widow surviving. Evidence was also produced showing that persistent and exhaustive efforts had been made to find William Shephard, or to ascertain what has become of him, without success. New evidence was also given in regard to the cultivation of part of the premises, and which shows that there was a vegetable garden upon the premises in 1862. It was also shown that there was a carriage road upon the grounds of the asylum, which passed through the premises in question, and was continually used. The evidence establishes that there were such acts and assertions, implying ownership, with reference to taxes, cutting through streets, and similar matters, and also that the premises in question were actually occupied as a vegetable garden, and that roads and walks were constructed through them between 1859 and 1862; also, that the premises were inclosed by a substantial fence at all times since about 1859, and that before that time the premises were inclosed, so as to be used for the purposes of an asylum, and that such premises have been fenced in for a period of 60 years. The evidence also shows that during all this time no adverse claim has ever been made by any one. It seems to me that this new evidence supplies the defects in the evidence given on the former trial, and that upon all the evidence the defendant has established that the Society of the New York Hospital acquired a good title to the property in question by adverse possession against all the world, including William Shephard and his heirs. Assuming that the society has acquired such title by adverse possession, I should, however, if the question came before me as an original one, hesitate about holding that the plaintiffs should be compelled to complete their purchase. The decision in this case will not quiet the title to the property, except as between the parties to the action, for the want of a conveyance by William Shephard will always be discovered by whosoever examines the record. If the plaintiffs are required to take title, and should hereafter wish to dispose of the property, the title will doubtless again be examined, and the defect again discovered. Their vendee may then refuse to accept the title, and litigation may arise between such vendee and the present plaintiffs. In that event it is by no means certain that the plaintiffs will be able to produce the evidence which, with so much labor, the representatives of the New York Hospital have gathered together and brought before the court upon this second trial. In such a case the present plaintiffs might find themselves in the same position as the present defendant now is,—with a title by adverse possession which is perfectly good as a means of defense against all the world, but which it might be difficult to establish in a legal proceeding by the necessary evidence. It seems to me that some of the observations contained in the opinion written by the chief judge of the court of appeals in the case of Fleming v. Burnham, 100 N. Y. 9, 2 N. E. 907, are applicable to this situation:

"Where all the parties in interest are before the court, and the court has jurisdiction to decide, they are concluded by the judgment pronounced, so

long as it stands unreversed, however imperfectly the evidence or facts were presented upon which the adjudication was made, or however doubtful the adjudication may have been in point of law. If the controversy involves a disputed question of fact, or the evidence authorizes inferences or presumptions of fact, the finding of the tribunal makes the fact what it is found to be for the purposes of the particular case, although the evidence of the fact may be weak and inconclusive, or although it is apparent that there are sources of information which have not been explored, which if followed might have removed the obscurity. The parties are nevertheless concluded in such a case, because they were parties to a judicial controversy before a tribunal constituted for the very purpose of deciding rights of persons and property, and before which they had an opportunity to be heard. But the court stands in quite a different attitude where it is called upon to compel a purchaser to take title under a judicial sale, who asserts that there are outstanding rights and interests not cut off or concluded by the judgment under which the sale was made. The objection may involve a mere question of fact, or it may involve a pure question of law upon undisputed facts. In either case it may very well happen that the question is so doubtful that, although the court would decide it upon the facts disclosed, in a proceeding where all the parties interested were before the court, nevertheless it would decline to pass upon it in a proceeding to compel a purchaser to take title, and would relieve him from his purchase. The reason is obvious. The purchaser is entitled to a marketable title. A title open to a reasonable doubt is not a marketable title. The court cannot make it such by passing upon an objection depending on a disputed question of fact or a doubtful question of law, in the absence of the party in whom the outstanding right was vested. He would not be bound by the adjudication, and could raise the same question in a new proceeding. The cloud upon the purchaser's title would remain, although the court undertook to decide the fact or the law, whatever moral weight the decision might have. It would especially be unjust to compel a purchaser to take a title, the validity of which depended upon a question of fact, where the facts presented upon the application might be changed on a new inquiry, or are open to opposing inferences."

That, to be sure, was the case of an attempt to compel the purchaser at a judicial sale to accept a doubtful title, but the reasoning of the court appears to be applicable to the present case, in which it is conceded that the record title is incurably defective, and that the title of the defendant depends upon the adverse possession of the hospital, and it also appearing that such title has been established with great labor and difficulty, and depends in part upon the testimony of witnesses who must in the natural course of events die before many years, and upon records, documents, and papers which might not be accessible to a subsequent purchaser. I do not feel at liberty, however, to decide the case in accordance with the views above suggested; for, as I understand the matter, the judgment obtained by the defendant at the first trial was reversed by the appellate division on the sole ground that the evidence was not sufficient to show that the New York Hospital, as against its co-tenant, if there was any, had acquired a good title by adverse possession. That evidence has now been supplied, and, as I am of the opinion that the society did acquire such title, it is my duty to adopt the views of the appellate division, and direct judgment in favor of the defendant, dismissing the complaint, and requiring the plaintiffs to carry out their contract of purchase in accordance with the terms therein.

Judgment accordingly.