PETER C. PROVOOST, Appellant, *v.* WILLIAM H. CALYER et al., Respondents.

P. C., by his will, executed prior to the Revised Statutes, devised certain premises to his son P., " during his natural life, after his decease to his lawful children." It did not appear but that all of the testator's property was specified in the will, and there was no residuary clause. *Held*, that, although by the law, as it then stood, a devise without words of limitation or inheritance carried a life estate only, yet if, from the provisions of the whole will, it might be inferred that the intent was to convey a fee, the intent would govern; and, as it is to be presumed that all of the testator's property was specified in the will, and that the testator intended to dispose of his whole interest therein, it follows that a fee was intended by the devise, for otherwise there would be a remainder undisposed of; and that, therefore, the testator's son P. took, under the devise, an estate for life, and his children *in esse* at the death of the testator took a vested remainder in fee which would open to let in after-born children.

In two clauses of the will words of inheritance were employed which were omitted in all the others; one of these last was a devise to testator's son J., who was charged with the payment of the testator's debts; in another clause he directed that a farm should be sold and the proceeds divided equally among his daughters, and that the share of his daughter J. was to be invested, the interest paid to her during life and at her death the principal and interest paid to her children. *Held*, that it was evident, from the whole will, that words of inheritance were not deemed by the testator important to vest an absolute estate.

(Argued June 23, 1875; decided September 21, 1875.)

APPEAL from judgment of the General Term of the Supreme Court, in the second judicial department, affirming a judgment in favor of defendants, entered upon a decision of the court at Special Term.

This was an action of ejectment to recover an undivided interest in certain premises in Brooklyn.

Peter Calyer died in December, 1804, seized of the premises in question and leaving a will, and seven children him surviving, of which will the following is a copy:

"In the name of God, amen: I, Peter Calyer, of the town of Bushwick, county of Kings, and State of New York, this

9th day of November, 1804, do make this my last will and testament as follows:

"Item. — I give and bequeath unto my loving wife Margaret, all my movable estate, also one lot of land lying in the city of New York, situate in Third street, also one-half of my dwelling-house. I reserve from my movable estate for my son Jacobus, my large bay mare and sorrel horse got by her, also for my son Peter my brown horse.

"Item. — I give and bequeath unto my son Charles, the house and land which he now has in possession, to him, his heirs and assigns forever, and also exonerate and discharge my son Charles from paying a bond I had assigned to me by Boswell Graves for £700.

"Item. — I give and bequeath unto my son Jacobus, my dwelling house, and all that part of my farm lying on the north-west side of a line beginning at a black walnut tree marked with three notches on the north side, running from thence westerly by the south side of a large white rock with a straight line until it strikes the clay hole; from thence southerly to the ditch; thence along the said ditch to the north-west corner of land belonging to Peter Meserole. Also grant a wagon road across the land which I bequeath to Peter, for Jacobus to pass and repass with wagon and horses to the highway; my son Jacobus shall pay all my debts and funeral charges.

"Item. — I give and bequeath unto my son Peter, all that part of my farm lying on the south and east side of the land I now have bequeathed to my son Jacobus, also a lot of salt meadow joining the ditch as it is now staked out, also grant to Peter a wagon road across the lands I have bequeathed to my son Jacobus to pass and repass to the river with wagons and horses, to him during his natural life, after his decease to his lawful children.

"Item. — I give and bequeath to my daughter Jane, one lot of land lying in the city of New York, situate in Eagle street, to her during her natural life, after her decease to her children.

"Item. — I give and bequeath to my daughters Eve, Margaret and Catharine, each one lot of land lying in the city of New York, situate, one in Eagle street, two in Essex street.

"I hereby empower my executors, and request as soon as convenient after my decease, for them to sell my farm situate in the town of Brooklyn, also a lot of wood land, in such manner as they shall judge best, and the money arising from the sale to be equally divided unto my four daughters, share and share alike, Jane's share to be put out on interest by my executors, and the interest arising annually to be paid to her, and after her decease, the principal and interest to her children.

"Item. — I give and bequeath to my three sons, Charles, Jacobus and Peter, one lot of turf meadow, situate in Newtown, county of Queens, share and share alike, to them, their heirs and assigns, and lastly, I do hereby appoint my brother-in-law, Isaac Debervois, and my neighbors Peter Meserole and Peter T. Schenk, executors of this my last will and testament.

"In testimony whereof, I, Peter Calyer, have hereunto set my hand and seal the day and year aforesaid.

"PETER CALYER." [L. s.]

Which said will was duly admitted to probate by the surrogate of the county of Kings, January 3, 1805.

The premises in suit are a portion of the lands devised by said will to testator's son Peter, who died in 1845, intestate, leaving five children him surviving. In July, 1848, said children voluntarily partitioned among themselves the lands left by their father, executing mutual deeds of release and quit-claim. The premises in question fell to the portion of the intestate's son Peter, who took possession and occupied the same under claim of title, until his death in 1874. He left a will by which the premises in question were devised to defendant William H. Calyer, who has since that time occupied, claiming title.

The plaintiff is the son of Catharine, daughter of the first mentioned Peter Calyer. Said Catharine died intestate and

Statement of case.

plaintiff claims as her heir. The trial court held that said defendant William H. Calyer was seized in fee of the premises and that plaintiff had no estate, right, title or interest therein.

*John Townshend* for the appellant. The devise to the testator's son Peter passed only a life estate to his children. (*Harvey* v. *Olmstead*, 1 N. Y., 489; *Edwards* v. *Bishop*, 4 id., 61; *Vanderzee* v. *Vanderzee*, 30 Barb., 331; 36 N. Y., 231; *Wright* v. *Page*, 10 Wheat., 227; *Doe* v. *Westley*, 7 D. & Ry., 114; *Doe* v. *Child*, 4 B. & P., 344; *Doe* v. *Allen*, 8 T. R., 502; *Wild's Case*, Coke, pt. 6, p. 16; *Vick* v. *Sueter*, 25 E. L. and E., 71; 2 El. & B., 219; *Stirgis* v. *Dunn*, 19 Beav., 135; *Harding* v. *Roberts*, 29 E. L. and E., 451; 10 Exch., 819; *Doe* v. *Vaughan*, 1 D. & R., 52; *Doe* v. *Daw*, 3 M. & S., 518; *Hay* v. *Earl of Coventry*, 3 T. R., 83; *Den* v. *Page*, id., 87; *Doe* v. *Clark*, 5 B. & P., 349; 2 N. R., 349.) The words in the devise, "all that part of my farm lying on the south," etc., were merely descriptive of the property. (*Denn* v. *Gaskin*, Cowp., 657; *Doe* v. *Wright*, 8 T. R., 64; *Dunn* v. *Mellor*, 5 id., 558; *Right* v. *Sidebotham*, Doug., 759; *Jackson* v. *Housel*, 17 J. R., 281; *Jackson* v. *Wells*, 9 id., 222.)

*P. V. R. Stanton* for the respondents. Under the devise the fee of the land vested in the children of the testator's son Peter, after his death. (*Jackson* v. *Luquere*, 5 Cow., 221, 230; *Scott* v. *Guernsey*, 48 N. Y., 106, 120; *Plimpton* v. *Plimpton*, 12 Cush., 458; *Butler* v. *Little*, 3 Greenl., 239; *Gernet* v. *Lynn*, 3 Penn. St., 497; *Sturges* v. *Cargill*, 1 Sandf. Ch., 323; *Leland* v. *Adams*, 9 Gray, 171; *Thompson's Lessee* v. *Hoop*, 6 Ohio St., 480, 488; *Smith* v. *Berry*, 8 Ohio, 365; *Bailis* v. *Gale*, 2 Ves., 51; *Doe* v. *Micklen*, 6 East, 486; 2 Jar. on Wills, 526; *Vernon* v. *Vernon*, 53 N. Y., 351, 301; *Kingsland* v. *Raplye*, 3 Edw., 13; *Spraker* v. *Van Alstine*, 18 Wend., 200, 207, 208.) The intent of the testator is the test of the construction. (Ram. on Wills, 1; *Wild's Case*, 6 Coke, 16; *Vanderzee* v. *Vanderzee*, 36 N. Y.,

231; *Pierrepont* v. *Edwards*, 24 How., 419; 25 N. Y., 128; *Clarke* v. *Lynch*, 46 Barb., 68; *White* v. *Hicks*, 43 id., 64; 33 N. Y., 383; *Underwood* v. *Green*, 56 id., 247; *Cook* v. *Holmes*, 11 Mass., 528; *Dunlap* v. *Crawford*, 2 McCord, 171; *Scott* v. *Guernsey*, 48 N. Y., 106; *Baker* v. *Briggs*, 12 Pick., 27.) The fee is vested in defendant by adverse possession. (*La Frombois* v. *Jackson*, 8 Cow., 596.)

Church, Ch. J. The principal question in this case is whether, under the will of Peter Calyer, senior, the children of his son Peter took a remainder in fee or only a life estate in the premises devised to the son. The particular clause in the will is as follows: "Item. I give and bequeath unto my son Peter, all that part of my farm lying on the south and east side of the land I now have bequeathed to my son Jacobus; also a lot of salt meadow adjoining the ditch as it is now staked out; also, grant to Peter a wagon road across the lands I have bequeathed to my son Jacobus, to pass and repass to the river with wagons and horses; to him, during his natural life; after his decease to his lawful children."

The will was executed in 1804, prior to the Revised Statutes; and by the law as then adjudged by the courts, a devise to a person without words of limitation or inheritance, carried a life estate only (1 N. Y., 489; 4 id., 61; 36 id., 231); and this construction was adhered to although the devise was of a remainder after an intermediate life estate. (Id.) Notwithstanding this general rule, it is well settled that if, from the provisions of the whole will, it may be inferred that the intent was to convey a fee, such construction will be given as to carry out that intent; and the intent is to govern if consistent with the rules of law. It is said that the presumption in favor of a life estate can only be overcome by a contrary intent clearly appearing. (3 Wend., 510; 4 N. Y., *supra*.) The meaning must be arrived at, not by conjecture, but by substantial reason, founded upon all the provisions of the will, the surrounding circumstances and the language employed. It is unnecessary to refine upon the certainty

with which the intent must be fixed. It is sufficient to say, that the adjudged construction of certain words will prevail unless it can be fairly seen that a different construction was intended. A blind adherence to arbitrary rules will frequently, if not generally, frustrate the design of a testator in the distribution of his property; and courts cannot be too vigilant in preventing such a result, whenever it can be done without overturning established principles.

In popular understanding the language itself of the clause in question would carry the whole estate to the children after the expiration of the life estate. When a testator declares that he gives certain property to a son during his life, and after his decease to his children, the natural inference is that the testator intended to vest the absolute property in the children. Indeed, in the absence of words of limitation this would be so by a general gift of land; and the whole estate would ordinarily be taken to pass (3 Greenl., 239); but the rule of the common law was against disinheriting the common-law heir without express words or clear intention to that effect. (*Wilds' Case*, Coke, part 6, p. 17, and cases before cited.)

In this will there are legitimate indications of an intent to give an absolute estate to the children of Peter, assuming that the language standing alone would give only a life estate. It does not appear but that all the testator's property was specified in the will; and the presumption is that it was. It is presumed, also, that the testator intended to dispose of his whole interest in his property. The law favors a construction which will prevent partial intestacy (53 N. Y., 351); and, as there is no residuary clause, it would follow that the fee was intended by the provision in question. Otherwise, there would be left a remainder after successive life estates, undisposed of. It was held in *Gernet* v. *Lynn* (31 Penn. St., 94), that a clause in a will declaring the purpose of the testator to dispose of his whole property, was alone sufficient to infer an intention to give the remainderman a fee, without words

of inheritance. The clause in that case was similar to that in this. The testator devised land to his son J. " to hold the same to him during his natural life, and after his decease, to his children lawfully begotten, share and share alike." The court says: "As there is nothing in the devise to the children tending to show that they were to take less than a fee simple, and as there was no other disposition of the property than that already referred to, it follows that the intention was to give the children of Jonathan the remainder in fee simple." (See, also, 3 Maine, 221.)

It is true that words of inheritance are employed in two clauses of the will, and omitted in all the others, but the manner of their use indicates, I think, that the testator had no accurate knowledge of their importance, either in using or omitting them. In the first item he gives to his son Charles the house and land which he now has in possession, to him, "his heirs and assigns forever," while in the second item he gives certain lands to his son Jacobus without these words. It is conceded that a fee was intended in the devise to Jacobus, because he is charged with the payment of the debts; but this would not have prevented the use of words of inheritance by the testator if he had understood their importance. It is quite evident from the whole will that these words were not deemed important to vest an absolute estate. In the third item he gives a lot of land to his daughter Jane during her life, and after her decease to her children, and in the fourth item he gives to each of his daughters, Eva, Margaret and Catharine, a lot of land, without words of limitation or inheritance. In the same item he directs his farm in the town of Brooklyn to be sold, and the avails equally divided among his daughters, except that his daughter Jane's share is to be put at interest, which is to be paid to her during her life, and after her decease the principal and interest paid to her children. This shows an intention, as to the children whose share was to be enjoyed for life only, to vest the absolute property in their children at their death. It may be presumed also that the testator intended an equal

division of his property among all his children, and the construction contended for would produce manifest inequality. It is evident that he regarded all his children equally the objects of his bounty, and their children as the representatives in interest of their parents. The presumption against disinheriting the heir has no substantial application in this case. The grandchildren of the two children who took a life estate, especially those then in being, were, as it must be presumed, equally the objects of the testator's bounty as his other children, and were intended to be substituted in place of their parents as heirs. Shaw, Ch. J., in *Plimpton* v. *Plimpton* (12 Cush., 458), lays down the general rule, " that when land is devised to one for life, and over to another, especially to a son, without words of limitation, or any further words to express his intent, such a devise over is construed to be a fee." It would be an artificial construction of this will to suppose that the testator intended to leave this and other remainders undisposed of, without even a residuary clause, and I cannot think that any court would be justified in giving it such a construction. It would be applying an arbitrary rule in violation of the intent of the testator. (11 Cush., 528; 5 Cow., 221; 48 N. Y., 106.). Nor did the son Peter take a fee. The rule in *Shelly's Case* does not apply. The word " children," as used in this will, is not equivalent to " heirs." The former is a word of purchase. Peter Calyer, the son, therefore, took a life estate, and his children *in esse*, at the death of the testator, took a vested remainder in fee, which would open to let in after-born children. (4 J. R., 61.)

The judgment must be affirmed.

All concur.

Judgment affirmed.