Per Curiam.
The opinion of Mr. Justice Vann, who-tried this cause in the court below, so clearly sets forth the law applicable to the question as to the validity of the defendant’s title, that nothing need be added thereto.
We think, however, that the learned Justice erred in granting an extra allowance to the defendant’s ex parte.
The plaintiff had a right to be heard upon this subject, before an adjudication upon it was made.
The judgment appealed from must therefore be modified by deducting from the money judgment entered herein, the sum of $250, the amount of said extra allowance, and as-modified affirmed without costs to either party.
The following is the special term opinion, filed April 4th, 1887.
Vann, J.
All the authorities agree that the purchaser of real estate under land articles may insist upon a maketable title or one free from judicial doubt Fleming v. Burnham, 100 N. Y., 1; Schriver v. Schriver, 86 Id , 575.
When the judicial doubt depends on a question of fact, the test is. whether upon all the evidence, in a trial at law, the court would order a verdict in favor of the title. Id.
When the judicial doubt depends upon a question of law, the test seems to be whether the court would hesitate long and anxiously before deciding that the title was good.
In this action the plaintiff justifies his refusal of a conveyance from the defendants, by alleging that the title to one of the lots in question did not pass-under the will of George Malone, a former owner, to his wife and sole devisee Jane Malone, one of the defendant grantors, but that it vested under the statute of descents in the heirs-at-law of said testator.
It is conceded that the defendants have acquired the rights of Jane Malone, but it does not appear that they have acquired any of the rights of the heirs at-law of George Malone.
The contention of the plaintiff requires a construction of said will, which is dated January 9, 1849, and was admitted to probate on 4th September. 1851
The substantial portion of the will in question is as follows viz I give * * * to my wife Jane all my real estate, viz: ” Then follows a specific de scription by reference to recorded conveyances of all the landed property that the testator is known to have owned at the date of the will, but not including the premises in question. "I likewise give * * * all my personal prop erty and * * * moneys to my said wife.” The testator acquired title to the premises in dispute on the 18th of April, 1851, and he died on the 6th of July in the same year.
The ultimate question, therefore, is whether the will is operative as to this subsequently acquired real estate. The intention of the testator, gathered from the language used by him in his will, when construed in the light of the circumstances surrounding him at the time, is the ordinary guide to a correct interpretation. Following this guide, it is apparent that the testator had but a single object in making his will, and that was to give all his property, both real and personal, to his wife; he did give to her all that he then owned beyond controversy, but he did not, in express terms, give her that which he might acquire between the date of his will and the day of his death. He did not expressly provide for a change in his estate, either real or personal.
There can be no reasonable doubt, however, that, as to his personal property, at least, he intended to give to his sole legatee all that he might own at. the time of his death. The will was not made, so far as appears, or as is probable, under the circumstances, during a sickness that .he thought was his last It is, therefore, to be presumed that he anticipated some changes in the nature and extent of the personal estate, which must necessarily change at very short intervals.
*411 It is further to be presumed, as the contrary does not appear, that he did not intend to die intestate as to any of his property. It follows from these presumptions that he did not intend to restrict the bequest to his wife to the personal property that he actually owned at the time he signed his will, but intended that it should include all the personal property that he might own at the date of his death, whenever that event should take place. This reasoning is based upon the language used, and is independent of the rule that as to personal property a will speaks from the death of the testator. It applies with less force to the devise of his real estate to the same person, because the language used is somewhat different, and the object of the gift is of a less changeable character. It throws light, however, upon the intention of the testator already manifest, to give everything that he possessed to his wife.
He devises his real estate in unlimited terms, and under a videlicet, enumerates the two parcels he then owned. In framing the devise proper, he used the most comprehensive expression in his power, to wit: “ All my real estate.” It seems to be conceded that if he had stopped here, the after-acquired land would have passed to the devisee, but the same result must follow the Bevised Statute, unless the videlicit clause is held to have been intended by the testator to cut down the gift and restrict it to the lands described. 3 R. S., 2284, § 5, 7th ed.
The object of this section was to change the common law rule, so that the will should operate as of the day of the death of the testator, as to all real estate acquired after its date, provided either ''in express terms,” or “in any other terms,” the testator manifested an ‘'intent to devise all his real property.” According to the general clause, he did so intend. Taking the will as a whole, it is evident that he did not intend by the videlicet clause to limit the effect of the general devise that preceded it, or to exclude after acquired property.
The form of the clause suggests an enumeration for the convenience of the devisee, not a limitation to confine her to the property enumerated. It is explanatory rather than restrictive, as in the second clause, he gives all his personal property, and then adds, for greater certainty and by way of enlargement rather than restriction, his money in bank or elsewhere, so, in the first clause, he devises all his real estate, and adds, by way of inclusion, so that it ' may not be overlooked, a description of two parcels. Otherwise, the testator must have intended to die intestate, as to all real property that he might subsequently acquire, even in exchange for that which he owned when he published his will. This would be inconsistent both with the presumption of law against intestacy and with the scheme of the will which was to give everything to his wife. After giving her all that was certain, why should he exclude h:r from the uncertain only? A strange and unnatural exception should not be spelled out, unless the language used clearly requires it. If he had owned three parcels of land, and had omitted one from the enumeration, there can be no doubt that the part omitted would have passed under the general clause, “ all my real estate,” because of the presumption against intentional intestacy. That presumption applies with greatest force to the will as it is, because it is improbable that the testator would use words of limitation inconsistent with all the rest of his will, for the express purpose of dying in testate as to that which he might never possess. Unless he actually intended to exclude from the general devise all after acquired real property, and to be intestate as to that only, the words in question cannot be held to be the words of limitation, or to modify that which precedes them.
The absence of a residuary clause also shows that he did not intend to use words of limitation, as without the use of such words there would be no residuum I think that the devise covered after-acquired land, and that the title of the defendants is free from reasonable doubt.
The latest authorities clearly sustain this position.
In Byrnes v. Baer (86 N. Y., 210), the statute changing the common law rule was carefully considered. In construing the words " other terms ” as used in the Bevised Statutes, the court said, that a’l the statute requires * # * is that the will should show by words depraesenti an intention to devise all the testator’s real property. If this is shown then the statute makes the will speak as of the time of his death. Hot only the language quoted, but the principle of the decision apply with controlling force to this case. See, also, Lent v. *412 Lent, 24 Hun, 436; Provoost v. Calyer, 62 N. Y., 545; Vernon v. Vernon, 53 id., 351; McNaughton v. McNaughton, 4l Barb., 50; Brown v. Brown, 16 id., 569; Ellison v. Miller, 11 id., 332; Willard on Ex’rs., 58; Fisher v. Hepburn, 14Beav., 627; Cushing v. Alywin, 12 Met., 109; Loveren y. Lamprey, 22 N. H. , 434; 2 Redf. on Wills., 442.
The heirs at-law of George Malone seem to have practically construed his. will in accordance with these views, as more than a generation has passed without the assertion by them of any claim to the contrary. The possibility that a, state objection may ripen unto a demand without any legal foundation, does not warrant the purchaser of real property in refusing to perform.
The claim that the defendants are not entitled to a specific performance, because they have not tendered a deed nor demanded the purchase-money, cannot be sustained, as upon the trial it was expressly admitted that no question was raised as to the readiness of the defendants to perform, except the one specified, relating to the title, which the plaintiff refused to advance.
The defendants are entitled to judgment in their favor, upon their counterclaim for a specific performance, with costs, and findings may be prepared, accordingly.