(63 Misc. Rep. 122.)

### CLARK v. KITTENPLAN.

(Supreme Court, Special Term, New York County. April, 1909.)

1. WILLS (§ 478*)—CONSTRUCTION—IMPLIED DEVISE.
    Under a devise for life to testator's daughter, and on her death before that of his other daughter leaving no issue, or children living to the age of 21, the property to go to such other daughter for life, and after her death to her children living to be 21, though an estate is not directly devised to the former daughter's children, such devise must be implied from the language "leaving no issue or children living to the age of 21 years."

    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 999; Dec. Dig. § 478.*]

2. WILLS (§ 498*)—CONSTRUCTION—BENEFICIARIES—"ISSUE."
    The word "issue," as a word of purchase, in the absence of any indication of a contrary intention, includes descendants generally; but where it is apparent, from extrinsic circumstances or the provisions of

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the will, that testator intended to use the word in the sense of "children," it will be so limited.

[Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 1087, 1088; Dec. Dig. § 498.*

For other definitions, see Words and Phrases, vol. 4, pp. 3782, 3792; vol. 8, p. 7693.]

3. JUDGMENT (§ 704*)—CONCLUSIVENESS—PERSONS CONCLUDED.

The dismissal on the merits of a partition suit by a daughter of testator's daughter, claiming that the grandchildren took a remainder in fee, bound no one but plaintiff, and was not res judicata as to the devisee of the grantee of the undivided interest of another of the grandchildren.

[Ed. Note.—For other cases, see Judgment, Cent. Dig. § 1229; Dec. Dig. § 704.*]

Action by Mary J. Clark against Morris Kittenplan. Judgment for plaintiff.

I. Newton Williams, for plaintiff.

P. S. Dean, for defendant.

O'GORMAN, J. This is an action for the partition of certain property in the city of New York, of which one William Spread died seised on the 13th of January, 1826. His will, dated November 24, 1825, is as follows:

"In the name of God, amen, I, William Spread, of the city of New York, being weak in body but of sound mind and memory, blessed be God for all His mercies, do this twenty-fourth day of November, in the year of our Lord one thousand eight hundred and twenty-five, make and constitute this my last will and testament in manner following, that is to say:

"First. I bequeath my soul to God, in humble hopes of His mercy through the merits and mediation of my blessed Saviour and Redeemer Jesus Christ, firmly trusting in Him for the salvation of my soul.

"Secondly. I give and bequeath to my daughter Nancy during her natural life the house and lot of ground No. 907, at the corner of Broome and Elizabeth streets, containing in breadth in front and rear twenty-five feet, more or less, and in length on the east side one hundred and three feet, and on the west one hundred and twenty-one feet six inches, more or less; and after her death to go to her children, but if her children should die before they are twenty-one years of age to go to my daughter Charlotte during her natural life and after her death to her children.

"Thirdly. I give to my said daughter Charlotte during her natural life the house and lot of ground No. 903, and also the gore of ground No. 904, adjoining it in Broome street, together with the buildings, etc., erected thereon, dimensions agreeable to a certain deed from Mr. Joseph Rose to me; and in case of her death before my said daughter Nancy, she leaving no issue or children living to the age of twenty-one years, the said property bequeathed to her to go to my said daughter Nancy during her natural life, and after her death to her children living to the age of twenty-one years. But in case both my said daughters Nancy and Charlotte should die, neither leaving any issue or children living to the age of twenty-one years, then the said property bequeathed to them to go to my sister Charlotte McCarthy, widow, and to her three daughters, namely, Charlotte, Nancy and Peggy, share and share alike.

"Fourthly. I desire that my house and lot of ground No. 902 Broome street be sold to the best advantage and my just debts and funeral expenses paid off as soon as possible after my decease. But, nevertheless if my said daughter Charlotte should think it more prudent and advisable to reserve said lot No. 902, together with the building, etc., thereon, on account of the advantage that would in time accrue to the property above bequeathed to her, she is to be allowed the privilege (that is to say) as long as she is punctual in paying up the interest of a certain bond and mortgage from me to Mr. James

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

Hays, of said city, for the payment of fourteen hundred dollars, with interest. And if she can save some proportion of the rents coming in to endeavor to reduce the principal by installments, until at last it might become clear, then it shall be hers during her natural life and after death to go to her children; but if failure be made in the payment and discharging my just debts left unpaid at my decease, then my creditors shall have it in their power to sell this said lot and premises No. 902, and if it should not bring sufficient money. to satisfy for both principal and interest, the creditors are to receive a proportion of the rents of said property bequeathed to my said daughter Charlotte until the principal and interest due to my creditors shall be totally discharged.

"Fifthly. It is my desire that each of my two daughters Nancy and Charlotte shall out of the rents that they shall receive, and at a convenient time after my decease, give or send twenty-five dollars each to sister Charlotte McCarthy, widow, and if she is not living, to be given to her two daughters Nancy and Peggy, twenty-five dollars to each.

"Sixthly. I appoint my son-in-law, Mr. John O'Neil, my said daughter Charlotte and my niece Charlotte McNiff executors of this my last will and testament.

"In witness whereof, I have to this my last will and testament set my hand and seal the day and year first above written.

"Wm. Spread. [L. S.]

"Signed, sealed and delivered in presence of:
  "W. Simpson.
  "Thomas Toole.
  "David Crone.
"Probated January 17, 1826."

The testator left two daughters as his only heirs at law, Nancy, the wife of John O'Neil, and Charlotte, who was unmarried at the time of her father's death. Charlotte married Lambert Van Hoesen in 1829, and died on September 22, 1877, survived by five children, all over the age of 21, viz.: Amelia, who afterward married George P. De Grau; George M. Van Hoesen; John W. Van Hoesen; Louisa, wife of William J. Ives; and Henry L. Van Hoesen. Amelia De Grau executed a deed to Benjamin S. Clark on December 24, 1879, whereby she conveyed an undivided one-fifth interest in the property in question. The said Benjamin S. Clark died on October 7, 1886, and by his will devised all his property, real and personal, to his wife, the plaintiff. The plaintiff contends: That under the will of William Spread the fee of the premises in question, as described in the third and fourth clauses thereof, vested in the five children of Charlotte, the claim of the defendants being that Charlotte as well as the children only took life estates, and that upon the expiration thereof the fee vested in Nancy and Charlotte, as heirs of their father; that thereafter Nancy executed a bargain and sale deed of her interest in the premises involved in this suit to her sister Charlotte; and that the premises passed under the will of Charlotte Van Hoesen, who devised the same in trust to her son George M. Van Hoesen, who as such trustee under the will of his mother conveyed the same to Samuel Aronson on February 19, 1889.

The rights of the parties depend upon a construction of the will of William Spread. The provisions affecting the property involved in this action are found in the third and fourth clauses of the will. By the third clause the testator expressly declares: "I give to my said daughter Charlotte during her natural life" the premises in question, and "in case of her death before my said daughter Nancy, she leav-

ing no issue or children living to the age of twenty-one years, the said property bequeathed to her to go to my said daughter Nancy during her natural life, and after her death to her children living to the age of twenty-one years." This expressly provides for a life estate to the daughter Charlotte, and, although an estate is not directly devised to the children of Charlotte, such a devise must be implied from the language "she leaving no issue or children living to the age of twenty-one years." Provoost v. Calyer, 62 N. Y. 545; Lytle v. Beveridge, 58 N. Y. 592. In Lytle v. Beveridge, supra, the will contained a devise of certain real estate to one Joseph "during his natural life, but if he leave no legitimate heirs" then the property to revert back to his son David, and the court said:

"Construing and giving effect to the words 'leave no legitimate heirs' as a definite limitation and the last two words, 'legitimate heirs,' as words of purchase, there is no difficulty in giving full effect to the mind and will of the testator. The law would imply a devise in fee to the children of Joseph living at the time of his death, and thus give effect to the intent to provide for them in case any should be left by, that is, who should survive Joseph, the first taker, and to limit the estate of Joseph to a life-estate and carry the remainder to David upon the happening of the contingency which did actually happen, that Joseph died leaving no surviving child."

In Provoost v. Calyer, where, as here, the court was construing a will made before the adoption of the Revised Statutes, Church, C. J., said:

"The will was executed in 1804, prior to the Revised Statutes, and by the law as then adjudged by the courts a devise to a person without words of limitation or inheritance carried a life estate only, and this construction was adhered to although the devise was of a remainder after an intermediate life estate. Notwithstanding this general rule, it is well settled that if, from the provisions of the whole will, it may be inferred that the intent was to convey a fee, such construction will be given as to carry out that intent, and the intent is to govern if consistent with the rules of law. It is said that the presumption in favor of the life estate can only be overcome by a contrary intent clearly appearing. The meaning must be arrived at not by conjecture, but by substantial reason founded upon all the provisions of the will, the surrounding circumstances, and the language employed. * * * In popular understanding the language itself of the clause in question would carry the whole estate to the children after the expiration of the life estate. When a testator declares that he gives certain property to his son during his life and after his decease to his children, the natural inference is that the testator intended to vest absolute property in the children."

In that case the testator used no words of inheritance. He gave to his son certain property "during his natural life, after his decease to his lawful children," and the court held that the children took a remainder in fee.

Within these decisions it must be held that the testator intended under the third clause of the will to give his daughter Charlotte a life estate in the property therein referred to, with the remainder in fee to her issue or children. It is objected, however, that, if this clause is to receive such a construction, the provision therein contained must nevertheless be deemed to be invalid as it unduly suspends the power of alienation. As the law stood when Spread died in 1826, an estate could not be tied up for more than any number of lives in being and 21 years. If the devise overran only to children of Charlotte, no

such controversy could arise; but it is claimed that by the use of the expression "issue or children" employed in the clause in question the testator intended to provide for the surviving children of Charlotte and the issue of her deceased children, if any, who would reach the age of 21 years, and that Charlotte might die leaving only infant children, who in turn might die before reaching the age of 21 years leaving infant issue them surviving, and so on indefinitely, so that the period of suspension of alienation would be extended beyond the period of 21 years after a life in being at the death of the testator. In my opinion this construction is unwarranted and is opposed to the intention of the testator as gathered from the entire instrument. The word "issue," as a word of purchase, in the absence of any indication of intention to the contrary, includes in its meaning descendants generally; but when it is apparent from extrinsic circumstances properly considered, or from the provisions of the will, that the testator intended to use the word "issue" in the sense of "children," its meaning will be so limited. Soper v. Brown, 136 N. Y. 249, 32 N. E. 768, 32 Am. St. Rep. 731; Chwatal v. Schreiner, 148 N. Y. 688, 43 N. E. 166.

In Am. & Eng. Ency. of Law (2d Ed.) pp. 546, 547, the text, supported by numerous citations, is as follows:

"When the word 'issue' in one part of the limitation is explained by the word 'children' in another part, as when there is a gift over in case the issue or children die under 21, the inference seems irresistible that the testator intends the word 'issue' throughout to denote 'children.' Issue co-relative with parents. When the word 'issue' in a deed or will is used in reference to the parent of that issue, as where the issue are to take the share of the deceased parent, it must mean his children; that is, the word 'parent' confines the word 'issue' to the children of the taker."

The intention of the testator can be easily ascertained. He had but two children, one married and one unmarried. His property consisted of three parcels. Each child was to take a parcel for herself for life, with the remainder to her children, and the third parcel was chargeable with the payment of decedent's debts, although the right was reserved to his daughter Charlotte to also take that parcel for herself for life, with remainder to her children. By the second clause of the will he gave the first parcel to his daughter Nancy for life, with remainder over to her "children" if they attained the age of 21. In default of such "children" surviving Nancy, then Charlotte was to take for life, with remainder to "her children reaching the age of twenty-one." It will be noted that in this clause the word "issue" is not used, nor does it appear in the fourth clause, where the third parcel is devised to Charlotte for life, with remainder to "her children." The will was not drawn by a skilled draftsman, and the word "issue" as used in the third clause was apparently employed as a word interchangeable or synonymous with the word "children." If the testator intended "issue" in its broad sense, it was unnecessary to use the word "children," inasmuch as "issue" in that sense embraces "children." The views urged by the defendants would require a construction that, while the testator unequivocally made the "children" of Charlotte the beneficiaries as to parcels 1 and 3 under clauses 2 and 4, yet as to par-

cel 2 the devise was to go to Charlotte's descendants indefinitely. There is nothing in the will to indicate an intention on the part of the testator to make such a discrimination. Parcels 2 and 3 were contiguous, and, as appears from the provisions of the fourth clause, the testator perceived an advantage in his daughter Charlotte and her children holding both pieces, and it is quite improbable that the deceased ever entertained the purpose which the defendants would impute to him.

That the word "issue" was used in the sense of "children" is evidenced by another circumstance. Although the word "issue" is not used in connection with the devise of the first parcel, and is not mentioned in connection with the devise over to Nancy and "her children" of the second parcel in the third clause in the event of Charlotte's death without "issue or children living to the age of twenty-one years," yet having disposed of these two parcels, and having without any ambiguity made the "children" remaindermen, particularly in the second clause, and as to Nancy in the third clause, the testator nevertheless directs that "in case both my said daughters Nancy and Charlotte should die, neither leaving any issue or children living to the age of twenty-one years," the property shall go to Charlotte Mc-Carthy, the sister of the testator. This interchangeable use of the words indicates without doubt that the word "issue" was not intended by the testator in its strict legal sense, and that he regarded it as the equivalent of "children."

It follows therefore that there was no suspension of the power of alienation. The failure of the "issue," upon which the estate would go over to the sister of the testator and her three children, must occur within lives (Nancy and Charlotte) in being at the death of the testator and 21 years, as if Nancy should die leaving no issue of the prescribed age, Charlotte's life estate would thereupon vest, and if Charlotte should thereafter die leaving a child or children the remainder would, of course, vest in such child or children within 21 years after the death of Charlotte; or, if the children of Charlotte should die before attaining the age of 21 years, the devise over to the testator's sister and her three daughters would vest immediately on the death of such child or children, and consequently within 21 years after the death of the last surviving daughter of the testator.

Under clause 4 the testator devised the third parcel to Charlotte for "life," and after her death to go to her "children." Charlotte was required to make payment of the interest on the $1,400 bond and mortgage affecting the premises; but the provision as to the gradual payment of the principal is merely advisory and directory. She is not charged with the payment of testator's debts; but, in the event of the debts not being paid, the testator directs that the creditors may sell this parcel, and, if the amount realized therefom be insufficient to discharge the debts, that the rents of parcel No. 2, previously devised to Charlotte, be applied to such purpose. So far as the creditors were concerned this provision had no legal efficacy; but it indicates that the testator intended that the debts should be payable out of the rents of the property devised to Charlotte and her children. Charlotte, as life

tenant, entered into possession of this property upon the death of her father in 1826, and thereafter obtained a quitclaim deed thereof from her sister Nancy, and continued in possession down to her death in 1877. I conclude therefore that the children of Charlotte took a remainder in fee in the premises in question, and that the plaintiff is seised of the undivided one-fifth interest therein conveyed by Amelia De Grau, a child of Charlotte Van Hoesen.

The affirmative defenses cannot be sustained. The partition suit brought in 1882 in the Superior Court of the city of New York by Mrs. Ives, a daughter of Charlotte Van Hoesen, based upon the claim relied on here by the plaintiff that the children of Charlotte took a remainder in fee, resulted in a dismissal of the complaint. This was not an adjudication binding on Mary J. Clark or any of the other defendants in that action. The dismissal on the merits bound the plaintiff in that action, and no one else, and is not res adjudicata as to the plaintiff. Ostrander v. Hart, 130 N. Y. 406, 29 N. E. 744. The decision of Chief Justice Sedgwick in that case was contrary to the law of the state as determined in 1875 in Provoost v. Calyer, 62 N. Y. 545. The plaintiff was a tenant in common with the four children of Mrs. Van Hoesen, sharing with them the income of the property, and adverse possession did not commence to run until February, 1889, when four of the children of Mrs. Van Hoesen conveyed the property in question to Samuel Aronson, at the same time that George M. Van Hoesen, one of the four children, as trustee under his mother's will, also executed a deed purporting to convey the same premises. This action was commenced in September, 1908, within 20 years, and the defense of adverse possession is unavailable.

Judgment for the plaintiff.